UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JASON SMITH,

    Plaintiff,

v.                                                   Case No. 2:22-cv-278-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for Supplemental Security Income (SSI).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to properly consider the opinion of Hadi Keylani, Advanced Registered Nurse Practitioner (ARNP). As the ALJ's decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

I.    *Background*

Plaintiff, who was born in 1976, claimed disability beginning December 1, 2020 (Tr. 229).[2] He was 44 years old on the alleged onset date. Plaintiff completed the

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).
[2] Plaintiff submitted a prior application for SSI, for which an ALJ issued an unfavorable hearing decision on May 1, 2020 (Tr. 16, 62-79). Plaintiff sought review of the prior unfavorable decision, but the Appeals Council denied Plaintiff's request for review on October 15, 2020 (Tr. 80-85).

ninth grade, and his past relevant work experience included work as a trimmer (Tr. 42, 53, 251).  Plaintiff alleged disability due to ankle pain, back pain, bipolar disorder, hepatitis C, neck pain, nephrotic syndrome, post-traumatic stress disorder (PTSD), schizophrenia, portal hypertension, subclinical hyperthyroidism, psychosis, and a folic acid and iron deficiency (Tr. 250).

Given his alleged disability, Plaintiff protectively filed an application for SSI in December 2020 (Tr. 229-38).  The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 86-115, 125-38, 140-45).  Plaintiff then requested an administrative hearing (Tr. 146-49).  Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff appeared and testified (Tr. 36-57).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-35).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since December 22, 2020, the application date (Tr. 18).  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: schizoaffective disorder,[3] alcohol use disorder, cannabis use disorder, opioid use disorder, heroin use

---

[3] The ALJ identifies schizoaffective disorder as a severe impairment but does not identify bipolar disorder as a severe impairment, despite Plaintiff's diagnosis of bipolar disorder (*see, e.g.,* Tr. 455, 791-916).  It is unclear whether the ALJ considered Plaintiff's bipolar disorder or whether the schizoaffective disorder identified by the ALJ was a schizoaffective disorder, bipolar type, as diagnosed by Dr. Lori Chang (Tr. 4110-111).  Since the decision does not reflect whether the ALJ properly considered Plaintiff's bipolar disorder (Tr. 15-29), the ALJ shall articulate upon remand whether Plaintiff's severe impairments include bipolar disorder and/or schizoaffective disorder.

disorder, PTSD, Crohn's disease, nephrotic syndrome, iron deficiency, hepatitis C, neck pain, and back pain (Tr. 18). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work with the following limitations: could occasionally climb stairs and ramps and balance; could never climb ladders or scaffolds; must avoid all unprotected heights; was able to perform simple, repetitive, reasoning level 1 to 2 tasks; could have no interaction with the general public and only occasional interaction with coworkers and supervisors; could work in a routine setting that has only occasional changes in the work routine; and must be able to work at a flexible pace, which is defined as a work environment free of fast-paced production work and free of fixed-time hourly units during the work shift, but the employer could set workday productivity goals (Tr. 22). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 23).

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), the ALJ determined that Plaintiff could not perform his past relevant work (Tr. 28). Given Plaintiff's background and RFC, the VE testified that Plaintiff

3

could perform other jobs existing in significant numbers in the national economy, such as a small parts assembler, a laundry folder, and an inspector and hand packager (Tr. 28-29, 54).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 29-30).  Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 224-26).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

      II.    *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in

sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4)(i)-(iv). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the

evidence preponderates against the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

### III. Discussion

Plaintiff solely argues that the ALJ erred by failing to properly consider the opinion of ARNP Keylani regarding the limitations Plaintiff suffered because of his mental impairments. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total

limiting effects of each. 20 C.F.R. §§ 416.920(e), 416.945(a)(2) & (e); *see Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (per curiam) ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC"); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

Under the regulations, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 416.920c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. § 416.920c(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 416.920c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration

of each opinion from the same source. *See* 20 C.F.R. § 416.920c(b)(1). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 416.920c(c)(3)(i)-(v), (4) & (5). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other factors.[4] 20 C.F.R. § 416.920c(b)(2).

Here, throughout the sequential evaluation process, the ALJ considered and discussed Plaintiff's mental impairments (Tr. 15-27). Initially, the ALJ determined that Plaintiff's schizoaffective disorder, alcohol use disorder, cannabis use disorder, opioid use disorder, heroin use disorder, and PTSD all constituted severe impairments (Tr. 18). The ALJ next concluded that, although severe, Plaintiff's mental impairments did not meet or equal the severity of a listed impairment because Plaintiff's mental impairments caused only mild limitations in Plaintiff's ability to understand, remember, or apply information; mild limitations in Plaintiff's ability to interact with others; moderate limitations in Plaintiff's ability to concentrate, persist, or maintain pace; and moderate limitations in Plaintiff's ability to adapt or manage

---

[4] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

himself during the relevant period (Tr. 20-21). In subsequently finding that Plaintiff retained the RFC to perform a reduced range of light work, the ALJ addressed both the medical evidence of record as well as the medical opinions of record, including that of ARNP Keylani.

Namely, Plaintiff began receiving psychiatric care from ARNP Keylani in April 2019 for medication management (Tr. 430-36). In August 2021, ARNP Keylani filled out a questionnaire regarding Plaintiff's mental RFC (Tr. 4050-53). ARNP Keylani opined that Plaintiff experienced primarily marked and extreme limitations in all areas of functioning, except that Plaintiff experienced only moderate limitations in his ability to relate to the general public and to maintain socially appropriate behavior (Tr. 4050-53).[5] ARNP Keylani further concluded that Plaintiff's condition would likely deteriorate if he was placed under stress, particularly that of a job, due to auditory hallucinations getting worse under stress and that Plaintiff's impairment lasted or was expected to last for 12 months or more (Tr. 4053). In considering ARNP Keylani's opinion, the ALJ stated:

> The undersigned is not persuaded by the opinions of ARNP Keylani who opined the claimant had extremely limiting restrictions including marked social interaction, marked and extreme sustained concentration of persistence, and marked and extreme adaption in August 2021. The opinions are inconsistent with the claimant's longitudinal findings on examination and treatment history including stable findings on examination since 2020 with ARNP Keylani. In June 2021, ARNP Keylani continued to find the claimant presented casually dressed and oriented and demonstrated normal cognitive function, good insight and

---

[5] For purposes of the questionnaire, "marked" meant "unable to function in this area from 26% to 50% of the work day or work week" and "extreme" meant "unable to function in this area over 50% of the work day or work week" (Tr. 4050).

> judgment, coherent and logical thought, appropriate mood and affect, normal speech, and normal psychomotor, but with auditory hallucinations, paranoia, and racing thoughts.

(Tr. 27) (internal citations omitted). The ALJ erred in his consideration of ARNP Keylani's opinion.

To begin, the ALJ's reference to "stable findings on examination" (Tr. 24, 27) does not accurately reflect the evidence of record nor, even if true, preclude a finding that Plaintiff suffered from a debilitating mental illness. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1106-07 (11th Cir. 2021). As in *Simon*, office visit notes reflecting Plaintiff's mood and affect as "appropriate" or "normal cognitive function" do not establish that Plaintiff does not suffer from debilitating mental illness. *See id.* at 1107. Chronic mental disorders "are characterized by unpredictable fluctuation of their symptoms, and thus it is not surprising that even a highly unstable patient will have good days or possibly good months." *Id.* at 1106 (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)). For those who suffer from chronic mental disorders, "'a snapshot of any single moment says little about [a person's] overall condition,' and an ALJ who relies on such snapshots to discredit the remainder of a psychiatrist's findings demonstrates a 'fundamental, but regrettably all-too-common, misunderstanding of mental illness.'" *Id.* (quoting *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (alteration in original).

Like the claimant in *Simon*, Plaintiff's diagnoses caused Plaintiff to experience more serious symptoms than those acknowledged by the ALJ. For instance, the notes of Dr. Chang, the psychological consultative examiner whose opinion the ALJ found

persuasive, highlight Plaintiff's long history of issues and continuing issues despite some normal findings on examination (Tr. 25, 27, 4102-11). As Dr. Change discussed, Plaintiff had a longstanding history of auditory hallucinations, trauma during childhood, moderate cognitive problems, significant substance abuse issues, persistent psychiatric symptoms during periods of sobriety, an adult crisis stabilization unit admission related to ingesting screws in an attempt to harm himself, multiple other instances of swallowing various amounts of screws with two surgeries to remove the screws, and reports of multiple suicide attempts and an inability to separate reality from fantasy (Tr. 4110-111). Even more, on the day of the consultative examination with Dr. Chang in "the relaxed, controlled setting of a medical clinic," Plaintiff presented with some normal findings upon mental status examination, but, notably, Plaintiff appeared moderately anxious and depressed, with tearful affect at times; struggled with moderate retrieval problems despite sincere effort and motivation; showed impaired judgment and capacity for insight; and "acknowledged intermittent thoughts of being 'better off dead'" (Tr. 4109-10). *See Simon*, 7 F.4th at 1107 ("Furthermore, when evaluating a claimant's medical records, an ALJ must take into account the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace.").

Further, contrary to the Commissioner's argument, the ALJ's reference to Plaintiff's testimony regarding an inability "to work full time due to waxing and waning mood and depression and to hearing voices" does not demonstrate that the ALJ sufficiently considered the variable nature of Plaintiff's condition. ARNP

Keylani's notes indicated that even when Plaintiff maintained sobriety, continued his medications, and showed mainly normal findings on examination, he still complained of an up-and-down mood, intermittent depression, auditory hallucinations, and paranoia on some occasions while denying such issues on other occasions (*see, e.g.,* Tr. 791-96, 798-803, 805-10, 819-24, 4055-60, 4069-74).  This sort of fluctuation comports with the episodic nature characteristic of an individual with bipolar disorder.

Taking everything together, I cannot conclude that substantial evidence supports the ALJ's RFC finding, as it is unclear whether the ALJ properly considered Plaintiff's mental impairments, including the episodic nature of his bipolar disorder, or whether the ALJ therefore properly considered ARNP Keylani's opinion regarding such impairments in the RFC assessment.  *See Gilet v. Comm'r of Soc. Sec.*, Case No. 2:20-cv-457-NPM, 2022 WL 950639, at *4-5 (M.D. Fla. Mar. 30, 2022) (remanding where ALJ failed to provide enough information in decision regarding what limitations he attributed to claimant's bipolar disorder); *Pinder v. Comm'r of Soc. Sec.*, Case No.: 6:20-cv-1164-MRM, 2021 WL 6062378, at *3-6 (M.D. Fla. Dec. 22, 2021) (finding ALJ's decision unsupported by substantial evidence where ALJ failed to consider fluctuations in symptoms and objective medical findings related to bipolar disorder).  Accordingly, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

IV.   *Conclusion*

After consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 31st day of July, 2023.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of Record